Laura A. Loveland ESPINOSA,
Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellee.

No. 00–71144.
Tax Ct. No. 20338–97.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 2001.

Decided Dec. 27, 2001.

Before BROWNING, REINHARDT
and TALLMAN, Circuit Judges.

MEMORANDUM *

Laura Loveland Espinosa ("Mrs.Espino-
sa") petitions for review from the United

* This disposition is not appropriate for publica-
tion and may not be cited to or by the courts

States Tax Court's decision, issued after a trial, holding her liable as a transferee under I.R.C. § 6901 for a portion of the unpaid income taxes and penalties attributable to her husband, Frederick Espinosa ("Mr.Espinosa"). Mrs. Espinosa disputes the Government's determination of Mr. Espinosa's tax liability, and argues that the Tax Court erred by finding that the Government sustained its burden of establishing Mr. Espinosa's insolvency at the time of the transfer. We have jurisdiction pursuant to I.R.C. § 7482, and we affirm.

■ Decisions of the Tax Court are reviewed under the same standards as civil bench trials conducted in the district court. Conclusions of law are reviewed de novo, while factual findings are subject to clearly erroneous review. *Custom Chrome, Inc. v. Comm'r*, 217 F.3d 1117, 1121 (9th Cir. 2000).

■ Mrs. Espinosa contends that she is not liable as a transferee because a notice defect invalidated the assessment of taxes owed by Mr. Espinosa. Because the deficiency notices the IRS mailed in 1989 were not sent to Mr. Espinosa's last known address, she argues, there is no tax liability to shift from transferor to transferee.

■ Mrs. Espinosa's argument fails because "tax liabilities, though unassessed, are deemed obligations due and owing at the close of the taxable year." *Edelson v. Comm'r*, 829 F.2d 828, 834 (9th Cir.1987). Even if we assume, for the sake of argument, that the notices were deficient, the Government's alleged failure to make a valid assessment would not render Mr. Espinosa's tax liability contingent. Rather, his liability was fixed at the close of the tax years in question. Moreover, we have

long-recognized that the IRS may pursue a transferee without first obtaining an assessment against the delinquent taxpayer. In *Comm'r v. Kuckenberg,* we held that "the government need not take futile assessment action against a taxpayer without assets." 309 F.2d 202, 206 (9th Cir.1962). As noted by the *Kuckenberg* Court, this position reflects Congressional intent that "in proceedings against the transferee, notice need not be given to the taxpayer." *Id.* (quoting H.R. CONF. REP. NO. 69–356, pt. 2 at 372 (1926)).

Here, the district court made factual findings that Mr. Espinosa ceased making payments to the IRS in 1991 (with the exception of one payment in 1993), and that from 1991 through trial Mr. Espinosa had no income, real property, vehicles or other assets by which the IRS could reasonably recover the debt. These findings are not clearly erroneous and they indicate that further efforts by the IRS to collect from Mr. Espinosa would have been futile. Thus, the Tax Court was correct in holding that the IRS could impose transferee liability on Mrs. Espinosa because Mr. Espinosa's tax liability existed whether the assessment was proper or not, and the IRS need not pursue a futile assessment action against the taxpayer before imposing transferee liability.[1]

■ Mrs. Espinosa argues also that the Tax Court erred by finding that the Government sustained its burden of establishing Mr. Espinosa's insolvency at the time of the transfer. Section § 6901 provides that the Government may assess and collect unpaid taxes incurred by a transferor of property from the transferee of the property. This provision does not create substantive liability on the part of the

---

of this circuit except as may be provided by 9TH CIR. R. 36–3.

1. Significantly, Mrs. Espinosa does not challenge the validity of the notice of transferee

liability she received from the IRS in July 1997.

transferee, but provides a method by which the Government may enforce tax liability on the transferor. In doing so, the burden of proof is on the Government to show that the transferee is liable, but the Government does not have to prove the transferor's underlying tax debt. 26 U.S.C. § 6902 (2001). We apply state law to determine whether a transferee is liable for the transferor's taxes under § 6901(a). *Edelson,* 829 F.2d at 833.

California Civil Code § 3439.05 states, in relevant part, that a transfer is "fraudulent as to a creditor whose claim arose before the transfer was made ... if the debtor made the transfer ... without receiving a reasonably equivalent value in exchange for the transfer ... and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Insolvency occurs when, "at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." Cal. Civ.Code § 3439.02(a) (2001). For purposes of this calculation, assets do not include property that has been transferred in a manner voidable under § 3439. Cal. Civ.Code § 3439 .02(d) (2001).

Prior to trial, the parties stipulated that Mr. Espinosa owed a debt to the IRS at the time of the transfer, and that the IRS's claim arose prior to the transfer. The parties also stipulated that the transfer of Lidak stock, which was made "for love and affection," was not supported by adequate consideration. Mrs. Espinosa does not challenge these stipulations on appeal.

The only issue, then, is whether the transfer rendered Mr. Espinosa insolvent under California law. The Government argues that it submitted evidence detailing Mr. Espinosa's tax debt as it was calculated in 1989, and that with penalties and interest this amount is in excess of $700,000. Mrs. Espinosa contends that because the notices of deficiency sent in 1989 were "invalid," the amount of tax owed by

Mr. Espinosa was only the $50,000 shortfall appearing on the income tax returns he filed in 1993. Because Mr. Espinosa's assets totaled approximately $90,000 at the time of the transfer and he only owed $50,000 in tax, Mrs. Espinosa reasons, the transfer did not render him insolvent.

The Tax Court did not clearly err in finding that Mr. Espinosa was insolvent at the time of the transfer. As explained above, the fact that the deficiency notices may have been procedurally deficient does not alter the tax liability faced by Mr. Espinosa in 1990 when the transfer took place. At the time of the transfer, Mr. Espinosa was liable for taxes due and owing at the close of tax years 1980 through 1985, as detailed in the documents the IRS submitted to the Tax Court. This amount far exceeds the $90,000 in assets claimed by Mr. Espinosa at the time of the transfer. Because there is no evidence that Mr. Espinosa made any tax payments in between the time the IRS calculated his tax liability in 1989 and the time of the transfer, the Tax Court did not err in finding that the transfer rendered Mr. Espinosa insolvent.

AFFIRMED.