T.C. Memo. 2003-178


UNITED STATES TAX COURT


DALE L. OYER, TRANSFEREE, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 11887-02L, 11888-02L,    Filed June 17, 2003.
          11889-02L, 11893-02L.


John Harley Trader, for petitioners.

Robert M. Fowler, for respondent.


MEMORANDUM OPINION


THORNTON, Judge:  This matter is before the Court on

respondent's motions for summary judgment in these consolidated

_____

[1] Due to an identity of issues, the following cases have
been consolidated herewith for the purpose of this opinion:  Acme
Leasing Trust, Transferee, docket No. 11888-02L; ABC Seamless
Trust, Transferee, docket No. 11889-02L; and Shirley J. Oyer,
Transferee, docket No. 11893-02L.

cases.  The issue for decision is whether respondent may proceed with collection of petitioners' transferee tax liabilities.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment may be granted where there is no genuine issue of any material fact and a decision may be rendered as a matter of law.  Rule 121(a) and (b);[2] see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988).  The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment.  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).  When a motion for summary judgment is made and properly supported, the adverse party may not rest upon mere allegations or denials of the pleadings but must set forth specific facts showing that there is a genuine issue for trial.  Rule 121(d).

As discussed below, on the basis of our review of the record, we conclude that there is no dispute as to a material

---

[2] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, as amended.

fact and that respondent is entitled to summary judgment as a matter of law.

## Background

The record establishes or the parties do not dispute the following:

### A. The Corporation's Tax Deficiency

On September 15, 1999, respondent timely mailed to ABC Seamless Siding & Guttering, Inc. (the corporation), a notice of deficiency. In the notice, respondent determined that for its taxable year ending December 31, 1995, the corporation had an income tax deficiency and related penalties totaling $75,767.50. In response, the corporation timely petitioned this Court at docket No. 18699-99 (the corporation's deficiency case).

On February 15, 2001, this Court entered a stipulated decision in the corporation's deficiency case, determining that there was a $41,873 deficiency in the corporation's income tax for the taxable year 1995. The stipulated decision was signed for the corporation by the same counsel who represents petitioners in the instant cases.

### B. Statutory Notices of Transferee Liability

On October 11, 2000, respondent mailed to petitioners substantially identical statutory notices of liability, determining that each petitioner was liable as a transferee of the corporation for its income taxes and penalties in the amount

of $94,738.85 for the taxable year ending December 31, 1995.[3]  In response, petitioners filed substantially identical petitions with this Court in the following cases (the transferee liability cases):  Dale L. Oyer, docket No. 673-01; Acme Leasing Trust, docket No. 674-01; Shirley J. Oyer, docket No. 675-01; and ABC Seamless Trust, docket No. 676-01.

C.    Stipulated Decisions in Petitioners' Transferee Liability Cases

On March 2, 2001, before respondent had filed an answer in any of the transferee liability cases, this Court entered stipulated decisions in those cases, determining that each petitioner was liable as a transferee of assets of the corporation in the amount of $58,008 plus interest as provided by law from March 15, 1996, to the date of payment.[4]  Each stipulated decision was signed for the petitioner by the same counsel who represents petitioners in the instant cases.

---

[3] This amount represents the corporation's $75,767.50 deficiency and related penalties, as determined in the corporation's notice of deficiency, plus an additional $16,135 attributable to the corporation's reported but unpaid tax liability and a $2,836.35 penalty with respect thereto.

[4] Ostensibly, this amount represents the sum of the corporation's $41,873 deficiency, as determined in the stipulated decision entered in the corporation's deficiency case, and the corporation's $16,135 reported but unpaid tax liability, as referenced in the preceding note.

D.   Notices of Federal Tax Liens

On May 11, 2001, respondent filed notices of Federal tax lien with respect to each petitioner's transferee liability, showing an $89,079.25 unpaid balance of assessment with respect to each petitioner.  In separate letters dated May 16, 2001, respondent notified each petitioner of this action and of the right to a hearing under section 6320.

E.   Petitioners' Requests for Hearings

Each petitioner timely submitted a Form 12153, Request for a Collection Due Process Hearing.  Attached to these Forms 12153 were substantially identical memoranda, asserting that each asserted tax lien was defective, erroneous, and improper because: (1) The stipulated decision in the corporation's deficiency case was jurisdictionally defective because the underlying notice of deficiency was invalid in that it determined a deficiency for the corporation's taxable year ending December 31, 1995, rather than for the corporation's final taxable period ending August 31, 1995; and (2) alternatively, each transferee's liability should be limited to $19,041, which petitioners seemed to suggest was the maximum value of assets that any of them actually received from the corporation.

F.   The Appeals Office Hearings

On July 25, 2001, an Appeals officer held a telephone hearing with respect to the collection proceedings against

petitioners ABC Seamless Trust and Acme Leasing Trust. On August 14, 2001, the Appeals officer held an in-person hearing with respect to the collection proceedings against petitioners Dale Oyer and Shirley Oyer.

On or about November 12, 2001, each petitioner submitted to the Appeals officer an offer in compromise based on doubt as to liability. In these offers in compromise, each petitioner offered to pay $50 to compromise the unpaid balance of assessment of transferee tax liability.

In addition, each petitioner submitted to respondent substantially identical documents dated November 15, 2001, and captioned "Amendment to Request for a Collection Due Process Hearing". In these documents, petitioners alleged that in determining their transferee liabilities, respondent had failed to take into consideration certain "additional liabilities" of the corporation that petitioners contended would more than offset the value of any assets that the corporation transferred to them.

G.   Respondent's Notices of Determination

On June 13, 2002, respondent issued to each petitioner a Notice of Determination Concerning Collection Action(s) Under Sections 6320 and/or 6330 (the notices). In the notices, respondent determined that petitioners could not challenge their underlying tax liabilities in these collection proceedings because these liabilities had been determined in prior judicial

actions.  In the notices, respondent also determined that petitioners' offers in compromise based on doubt as to liability were unacceptable because each petitioner's underlying tax liability was based on a Tax Court decision and because each petitioner was noncompliant with income tax filing requirements. In the notices, respondent determined that all applicable legal and administrative procedures had been met and that collection actions could proceed against petitioners.

H.    The Petitions

On July 18, 2002, petitioners filed with the Court substantially identical petitions challenging the notices.[5]  In the petitions, petitioners challenge their transferee tax liabilities and also challenge the Appeals officer's rejection of their offers in compromise.

I.    Respondent's Motions for Summary Judgment

On January 31, 2003, respondent filed substantially identical motions for summary judgment in each petitioner's case. On February 13, 2003, petitioners filed substantially identical responses opposing respondent's motions for summary judgment in each case.  On February 24, 2003, the Court held a hearing in

---

[5] When these petitions were filed, Dale Oyer resided in Kansas City, Missouri, and Shirley Oyer resided in Shawnee, Kansas.  The petitions for Acme Leasing Trust and ABC Seamless Trust each listed the same Kansas City, Missouri, mailing address.

Kansas City, Missouri, on respondent's motions for summary judgment.

## Discussion

A.   Statutory Framework

Section 6321 imposes a lien in favor of the United States on all property and property rights of a person who is liable for and fails to pay taxes after demand for payment has been made. The lien arises when assessment is made and continues until the assessed liability is paid.  Sec. 6322.  For the lien to be valid against certain third parties, the Secretary must file a notice of Federal tax lien and, within 5 business days thereafter, provide written notice to the taxpayer.  Secs. 6320(a), 6323(a). The taxpayer may then request an administrative hearing before an Appeals officer.  Sec. 6320.  Once the Appeals officer issues a determination, the taxpayer may seek judicial review in the Tax Court or a District Court, as appropriate.  Sec. 6330(d).

Section 6330(c) prescribes the matters that a person may raise at an Appeals Office hearing, including spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection.  Of particular significance here is section 6330(c)(2)(B), which provides:

>          (B) Underlying liability.--The person
>     may also raise at the hearing challenges to
>     the existence or amount of the underlying tax
>     liability for any tax period if the person

> did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Moreover, except in certain limited circumstances, a person is generally precluded from raising at the Appeals Office hearing any issue raised and considered in any previous administrative or judicial proceeding.  Sec. 6330(c)(4).

B.   Petitioners' Challenges to Their Underlying Tax Liabilities

In this collection proceeding, petitioners challenge their underlying tax liabilities as transferees of the corporation for its 1995 tax liability.  More particularly, having previously agreed to this Court's stipulated decisions in the transferee liability cases, petitioners now seek in this collection proceeding to repudiate those stipulated decisions on various grounds.  They argue, among other things, that respondent's notice of deficiency to the corporation was invalid and that consequently this Court's stipulated decisions in the corporation's deficiency case and in the transferee liability cases were jurisdictionally defective.  Petitioners also contend that the stipulated decisions in the transferee liability cases failed to take into account certain of the corporation's liabilities (apparently because petitioners failed to assert them in the transferee liability cases), which, if considered, would more than offset the value of any assets the corporation

transferred to them, thereby reducing their transferee liabilities to zero.

1. <u>Res Judicata</u>

Under the general rule of res judicata, "when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" <u>Commissioner v. Sunnen</u>, 333 U.S. 591, 597 (1948) (quoting <u>Cromwell v. County of Sac</u>, 94 U.S. 351, 352 (1876)).

The stipulated decision that this Court entered in each petitioner's transferee liability case was res judicata for purposes of determining each petitioner's transferee liability. See <u>Baptiste v. Commissioner</u>, 29 F.3d 433, 436-437 (8th Cir. 1994), affg. in part and revg. in part 100 T.C. 252 (1993); <u>Krueger v. Commissioner</u>, 48 T.C. 824 (1967). These stipulated decisions preclude petitioners from relitigating their transferee liabilities in this collection proceeding. See <u>Katz v. Commissioner</u>, 115 T.C. 329, 340 n.16 (2000); <u>Gunderson v. Commissioner</u>, T.C. Memo. 2002-26.

Petitioners argue that res judicata is inapplicable here because the stipulated decisions in the transferee liability

cases were entered before respondent filed answers therein. Petitioners' argument is without merit. A stipulated decision reflects the compromise and settlement of a tax case, which is governed by general principles of contract law. <u>Robbins Tire & Rubber Co. v. Commissioner</u>, 52 T.C. 420, 435-436, supplemented by 53 T.C. 275 (1969). The decision in a stipulated case is deemed rendered on the date the Court enters it. See sec. 7459(c). Neither the ability of the parties to enter into a stipulated settlement nor the ability of the Court to enter a decision reflecting the stipulated settlement depends upon the Commissioner's filing an answer.

Petitioners also argue that res judicata is inapplicable here because this Court lacked jurisdiction in the transferee liability cases in that the corporation's notice of deficiency was invalid. Petitioners argue that the corporation's notice of deficiency was invalid because it was based on the taxable year ending December 31, 1995, whereas the corporation's final tax period ended August 31, 1995, just before it was liquidated.

Petitioners are mistaken in their premises as to the prerequisites of this Court's jurisdiction in a transferee liability case. The Tax Court has jurisdiction in a case commenced by respondent's issuance to a transferee of a notice of liability. See sec. 6901; Rule 13(a); <u>Groetzinger v. Commissioner</u>, 69 T.C. 309 (1977). The validity of a notice of

transferee liability does not depend upon the issuance to the transferor of a valid notice of deficiency. See Kuckenberg v. Commissioner, 35 T.C. 473, 483 (1960), affd. on this issue 309 F.2d 202 (9th Cir. 1962); Cleveland v. Commissioner, 28 B.T.A. 578 (1933), affd. sub nom. Flynn v. Commissioner, 77 F.2d 180 (5th Cir. 1935); Espinosa v. Commissioner, T.C. Memo. 2000-66, affd. 24 Fed. Appx. 825 (9th Cir. 2001). Consequently, the alleged defect in the corporation's notice of deficiency would not, in and of itself, impair this Court's jurisdiction in the transferee liability cases.[6]

In any event, the notice of deficiency to the corporation would not be invalid merely because it covered the entire 1995 year. See Burford v. Commissioner, 76 T.C. 96, 100 (1981), affd. without published opinion 786 F.2d 1151 (4th Cir. 1986); Sanderling, Inc. v. Commissioner, 66 T.C. 743, 749 (1976) ("where the notice [of deficiency] is based on the taxpayer's final tax period and covers the entire period of the taxpayer's operations, it is a valid determination for that period"), supplemented by 67 T.C. 176 (1976), affd. 571 F.2d 174 (3d Cir. 1978).

---

[6] Moreover, we note that petitioners' transferee liabilities are not predicated entirely on the corporation's deficiency as determined in the notice of deficiency. Rather, as previously noted, petitioners' transferee liabilities, as determined in the notices of transferee liability, also include $16,135 attributable to the corporation's reported but unpaid 1995 tax liability. This $16,135 amount was not subject to deficiency procedures.

2.  Section 6330(c)(2)(B)

In addition to principles of res judicata, the provisions of section 6330(c)(2)(B) prevent petitioners from challenging in this collection proceeding the existence and amount of their transferee tax liabilities.

In an effort to avoid this result, petitioners urge upon us a novel interpretation of section 6330(c)(2)(B).  They contend that section 6330(c)(2)(B) authorizes a person to challenge the amount or existence of tax liability in a collection proceeding if the person meets either of two purportedly disjunctive criteria:  (1) If the person did not receive any statutory notice of deficiency; or (2) if the person did not otherwise have an opportunity to dispute the tax liability.  Petitioners contend they meet the former criterion because they received no statutory notices of deficiency but only statutory notices of transferee liability.  Thus, petitioners conclude, the literal language of section 6330(c)(2)(B) permits them to challenge their underlying tax liabilities.

We are unaware that any court has explicitly addressed the merits of the highly literal construction of section 6330(c)(2)(B) that petitioners urge upon us.  In numerous cases, however, this Court and other courts have implicitly rejected petitioners' reading of section 6330(c)(2)(B).  See, e.g., Aguirre v. Commissioner, 117 T.C. 324 (2001) (taxpayers who

signed a Form 4549 waiver, consenting to the immediate assessment and collection of taxes, and consequently received no statutory notice of deficiency, were barred from challenging their underlying tax liability in the collection proceeding); Sego v. Commissioner, 114 T.C. 604 (2000) (taxpayers who deliberately refused to accept delivery of deficiency notices repudiated their opportunity to contest the notices of deficiency); Dami v. IRS, 89 AFTR 2d 2002-1368, 2002-1 USTC par. 50,433 (W.D. Pa. 2002) (taxpayer who received a "Recovery Letter" with respect to a trust fund recovery penalty was barred from challenging the underlying tax liability in his collection proceeding); Konkel v. Commissioner, 86 AFTR 2d 2000-6939, 2001-2 USTC par. 50,520 (M.D. Fla. 2000) (similar to Dami v. IRS, supra). Close analysis of petitioners' statutory interpretation exposes its error and confirms the essential soundness of this line of judicial precedents.

In the first instance, we are unpersuaded that petitioners received no "notice of deficiency" within the meaning of section 6330(c)(2)(B). For present purposes, the notices of transferee liability that petitioners received were the equivalents of notices of deficiency.[7]

---

[7] Sec. 6901(a) provides that transferee liability for the transferor's income taxes must be "assessed, paid, and collected in the same manner and subject to the same provisions and limitations" as the transferor's tax liability. Consequently, to
(continued...)

But even if we were to assume, arguendo, that petitioners' notices of transferee liability were not notices of deficiency within the meaning of section 6330(c)(2)(B), we still must reject their strained and illogical argument that the statute sets forth two alternative criteria authorizing challenges to underlying tax liability in collection proceedings.  Section 6330(c)(2)(B) plainly sets forth a single operative criterion, in the form of a stricture:  the person seeking to challenge the underlying tax liability in a collection proceeding must not have had another opportunity to raise the challenge.  Presumably for the sake of clarity and emphasis, the statute refers particularly to persons who have not received notices of deficiency while referring more generally to persons who "otherwise" lacked opportunities to dispute their tax liabilities.  Contrary to petitioners' argument, however, these references do not denote separate criteria; they merely circumscribe the two categories of persons

---

[7](...continued)
proceed against a transferee to assess and collect under sec. 6901 the transferor's income tax deficiency, the Commissioner must use the same deficiency procedures that would apply in assessing and collecting the deficiency from the transferor. Those deficiency procedures include mailing a notice of deficiency as required by sec. 6212.  See Dillman v. Commissioner, 64 T.C. 797, 800 (1975).  Sec. 6901(f) explicitly equates the mailing of the requisite notice of transferee liability with the mailing of a notice of deficiency, by referring to the "mailing to the transferee * * * of the notice provided for in section 6212".

that, taken together, make up the complete class of persons who satisfy the single operative criterion.

Moreover, petitioners' argument founders again in failing to appreciate that what it mischaracterizes as separate criteria are expressed as negations (i.e., persons who did <u>not</u> receive deficiency notices or persons who did <u>not</u> otherwise have an opportunity to dispute the tax liability). Rather than signifying alternative circumstances in which a person will be <u>qualified</u> to challenge the underlying tax liability (as petitioners contend), these negations denote, in essence, circumstances in which a person may be <u>disqualified</u> from doing so.[8]

In sum, the sense of section 6330(c)(2)(B) is that a person may challenge the tax liability in a collection proceeding if that person lacked another opportunity to raise the challenge, by

---

[8] The flaws in petitioners' logic might be made more evident with a homely example:  a child is told that she may have dessert if she did not eat a cookie on the schoolbus or did not otherwise have sweets after school.  This ingenious child--petitioners' figurative progeny--confesses that she ate sweets all afternoon but argues that she is still entitled to dessert because she ate no cookie on the bus. Result:  no dessert.

If the child is not only ingenious but persistent as well, she might protest that this result effectively transforms disjunctive criteria (not eat a cookie <u>or</u> not otherwise have sweets) into conjunctive criteria (not eat a cookie <u>and</u> not otherwise have sweets).  She might be answered that there never were two criteria to be either disjoined or conjoined, but only the one operative criterion that she not eat sweets after school, the business about the cookie being a prime example of the stricture.

virtue of not having received a notice of deficiency or otherwise. Because petitioners had (and availed themselves of) previous opportunities to dispute their underlying transferee tax liabilities, section 6330(c)(2)(B) bars them from challenging those liabilities in this collection proceeding.

In conclusion, principles of res judicata apply here and operate, along with section 6330(c)(2)(B), to prevent petitioners from challenging in this collection proceeding the existence and amount of their transferee tax liabilities.[9]

C.   Petitioners' Offers in Compromise

In their various offers in compromise on the basis of doubt as to liability, each petitioner proposed to pay $50 in satisfaction of the unpaid balance of assessments of transferee liability. Respondent rejected these offers in compromise on grounds that the transferee liabilities had been determined in the transferee liability cases and that petitioners were not in compliance with income tax filing requirements. We review respondent's action for abuse of discretion, on the basis of the arguments and information available to the Appeals officer when the discretion was exercised. See Sego v. Commissioner, 114 T.C. at 610.

---

[9] Respondent has not raised and we do not reach any issue as to whether petitioners are also precluded from challenging their underlying tax liabilities by sec. 6330(c)(4).

Given that each petitioner had previously entered into a stipulated decision agreeing to transferee liability of $58,008 plus interest (an amount that by May 11, 2001, had grown to $89,079.25), we do not believe the Appeals officer abused his discretion in rejecting each petitioner's offer to compromise that transferee liability for $50.  Regulations promulgated under section 7122(c) provide that the Secretary may compromise a liability on various grounds, including doubt as to liability, but state:  "Doubt as to liability does not exist where the liability has been established by a final court decision or judgment concerning the existence or amount of the liability." Sec. 301.7122-1T(b)(2), Temporary Proced. & Admin. Regs, 64 Fed. Reg. 39020 (July 12, 1999).  As previously discussed, the stipulated decisions in petitioners' transferee liability cases constitute final decisions on the merits.  See Baptiste v. Commissioner, 29 F.3d at 436.  Respondent's decision to reject petitioners' offers in compromise based on doubt as to liability was a reasonable exercise of discretion given that there was no doubt as to petitioners' liabilities, within the meaning of the applicable regulations or otherwise.[10]

---

[10] In light of this holding, we need not address petitioners' argument that respondent erred in determining that they were noncompliant with income tax filing requirements.

We have considered all contentions the parties have raised. To the extent not addressed herein, these contentions are without merit or unnecessary to reach.

On the record before us, we shall grant respondent's motions.

To reflect the foregoing,

<u>Orders granting respondent's motions and appropriate decisions will be entered</u>.