T.C. Memo. 2008-88

UNITED STATES TAX COURT

FRED L. AND BEVERLY R. AMTOWER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24636-06L.              Filed April 7, 2008.

<u>William E. Buchanan</u>, for petitioners.

<u>Brenda M. Fitzgerald</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  This case is before the Court on respondent's

motion for summary judgment pursuant to Rule 121.[1]  The issue we

must decide is whether respondent's Appeals Office abused its

--------

[1]Unless otherwise indicated, all Rule references are to the
Tax Court Rules of Practice and Procedure, and all section
references are to the Internal Revenue Code, as amended.

discretion in determining to proceed with collection of petitioners' tax liability for taxable year 1982.

For the reasons stated below, we shall grant respondent's motion for summary judgment.

## FINDINGS OF FACT

At the time the petition was filed, petitioners resided in Georgia.

On March 7, 2005, respondent sent petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy), with respect to their 1982 tax year liability.

Petitioners' tax liability for the year 1982 was determined in the case of Amtower v. Commissioner, docket No. 761-87. That case was resolved in accordance with the Court's disposition of certain issues in the case of Krause v. Commissioner, 99 T.C. 132 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994). Krause was the test case for the Elektra/Hemisphere group of cases. Id. at 133. The decision in docket No. 761-87 was entered on September, 27, 1999. Petitioners' liability for tax year 1982 was assessed on or about February 2, 2000.

The record establishes that petitioners entered into an offer-in-compromise with respondent in 1995 for a number of other outstanding tax years (the 1995 compromise) while their 1982 tax

liability was pending before this Court. Neither party has been able to produce a copy of this offer-in-compromise. Petitioners argue that they believed the 1982 liability was included in the 1995 compromise when they entered into it. Respondent has produced evidence, however, that petitioners informed respondent in October 2000 of their intention to submit a new offer to compromise the 1982 tax liability, and they submitted an offer-in-compromise in January 2001.

In response to a notice of intent to levy, petitioners filed a Form 12153, Request for a Collection Due Process Hearing, for the 1982 tax liability. After the Fresno, California, Appeals Office sent petitioners a letter informing them that a telephone hearing had been scheduled and enclosing a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, requesting additional information, petitioners requested that the matter be forwarded to the Atlanta Appeals Office for a face-to-face hearing. On August 18, 2005, respondent received a Form 656, Offer in Compromise, dated July 5, 2005, from petitioners for tax year 1982 (the 2005 compromise). Petitioners did not enclose a completed Form 433-A with the 2005 compromise. On their Form 656, petitioners checked the "Doubt as to Liability" box, indicating that they were submitting the offer because they believed that the 1982 liability was included in the 1995 compromise, and therefore they

were not liable for any tax. On September 13, 2005, a settlement officer from the Atlanta Appeals Office sent petitioners a letter informing them that a telephone hearing had been scheduled for October 25, 2005. The settlement officer included a Form 433-A, which he instructed petitioners to complete and return if petitioners wanted the settlement officer to consider alternative collection methods, including future offers-in-compromise.

On October 25, 2005, the telephone hearing was held. During the call, petitioners continued to assert their belief that the 1982 tax liability was included in the 1995 compromise. Petitioners did not raise any other issues or collection alternatives but requested that they be granted until November 30, 2005, to submit an additional offer-in-compromise for the 1982 tax year. Petitioners did not file any additional offers-in-compromise and did not provide a completed Form 433-A to the settlement officer.

On November 3, 2006, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) to petitioners sustaining the proposed collection action and rejecting the 2005 compromise. On December 1, 2006, petitioners filed a petition with this Court for review of respondent's determination to proceed with the collection action of petitioners' 1982 tax liability. On October 15, 2007, respondent filed a motion for summary judgment. On

November 13, 2007, petitioners filed an objection to respondent's motion for summary judgment.

OPINION

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment where there is no genuine issue of any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine issue of material fact, and the Court will view any factual material and inferences in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). Rule 121(d) provides that where the moving party properly makes and supports a motion for summary judgment "an adverse party may not rest upon the mere allegations or denials of such party's pleading," but must set forth specific facts, by affidavits or otherwise, "showing that there is a genuine issue for trial."

This collection review proceeding was filed pursuant to section 6330. Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made. Section 6330(b)(1) and (3)

provides that if a person requests a hearing, that hearing shall be held before an impartial officer or employee of the IRS. At the hearing, a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives, including offers-in-compromise. Sec. 6330(c)(2)(A). A taxpayer is precluded from contesting the existence or amount of the underlying tax liability at the hearing unless the taxpayer failed to receive a notice of deficiency for the tax in question or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must make a determination whether the proposed levy action may proceed. The Appeals Office is required to take into consideration: (1) The verification presented by the Secretary that the requirements of applicable law and administrative procedures have been met; (2) the relevant issues raised by the taxpayer; and (3) whether the proposed levy action appropriately balances the need for efficient collection of taxes with a taxpayer's concerns that the levy action be no more intrusive than is necessary. Sec. 6330(c)(3).

Section 6330(d) grants the Court jurisdiction to review the determination by the Appeals officer to proceed with collection

action via levy after the hearing. Where the validity of the underlying tax liability is at issue in a collection review proceeding, the Court will review the matter de novo. Davis v. Commissioner, 115 T.C. 35, 39 (2000). Where the underlying tax liability is not at issue, however, the Court will review the determination of the Appeals Office for an abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 182 (2000).

Because petitioners had an opportunity before their hearing to contest their 1982 tax liability, the underlying liability was not properly at issue, and we review respondent's determination for an abuse of discretion. An abuse of discretion is proven by showing that the Commissioner exercised this discretion arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19 (1999).

Section 7122(a) authorizes the Secretary to compromise any civil case arising under the internal revenue laws. Compromises may be made on three grounds: (1) Doubt as to liability (DATL); (2) doubt as to collectibility (DATC); and (3) promotion of effective tax administration (ETA). ETA is further divided into hardship and nonhardship ETA. Sec. 301.7122-1(b), Proced. & Admin. Regs.

Petitioners oppose respondent's motion for summary judgment on two grounds: (1) Summary judgment is not proper because the question of whether the 1982 tax liability was included in the

1995 compromise remains open and further discovery is needed; and (2) respondent abused his discretion by not evaluating petitioners' 2005 compromise as to DATC and ETA.

The 1995 Compromise

Petitioners first argue that summary judgment is improper because respondent has not produced a copy of the 1995 compromise showing that the 1982 tax liability was not included and as a result we must deny respondent's motion because we are left with a question of material fact for trial.

As stated above, petitioners' 1982 tax liability arose from an order of this Court dated September 27, 1999. Amtower v. Commissioner, docket No. 761-87. Petitioners' 1982 tax liability was finally determined when the Court entered a decision in docket No. 761-87 on September 27, 1999, 4 years after the 1995 compromise. It is important to note Internal Revenue Service (IRS) guidelines concerning offers-in-compromise as they relate to unassessed taxes. According to the Internal Revenue Manual (IRM) in effect during 1995, "Taxpayers may submit an offer to compromise taxes which have not yet been assessed. IRS has no statutory authority to compromise unassessed taxes. Therefore, before the offer can be accepted, the taxes must be assessed." IRM sec. 57(10)1.42 (Sept. 22, 1994). Although petitioners could have included the outstanding 1982 liability in an offer-in-compromise, that offer could not be accepted until the tax was

assessed, according to the procedures described in the IRM. Because petitioners' 1982 tax liability was not assessed until after this Court entered a decision against them in docket No. 761-87 in 1999, that liability could not have been included in the 1995 compromise without departing from those procedures.

Respondent has also produced evidence that petitioners filed a subsequent offer-in-compromise for their 1982 tax liability in January 2001. Respondent rejected that offer in June 2001. Had petitioners' 1982 tax liability been compromised, filing further offers-in-compromise would have been unnecessary.

Because we find that the 1982 tax liability was not included in petitioners' 1995 compromise, respondent has carried his burden of proving that there are in that respect no genuine issues of material fact that would preclude summary judgment. We will now review for an abuse of discretion respondent's determination to proceed with the proposed levy.

The 2005 Compromise

Petitioners argue that respondent abused his discretion by: (1) Failing to evaluate petitioners' 2005 compromise on the basis of DATC and promotion of ETA; and (2) requiring both a copy of the 1995 compromise and a Form 433-A before he would consider petitioners' offer-in-compromise.

In order to have an offer considered, taxpayers must submit a Form 12153 and all other information prescribed or requested by

the Secretary.  Sec. 301.7122-1(d), Proced. & Admin. Regs.

Taxpayers submitting offers-in-compromise based solely on DATL

will not be required to provide financial statements.  Id.

However, a settlement officer may not consider offers-in-

compromise based on DATC or ETA unless the taxpayers submit a

Form 433-A.  Rev. Proc. 2003-71, sec. 4.03, 2003-2 C.B. 517, 518.

At petitioners' October 25, 2005, hearing, petitioners

alleged that the 1982 tax liability should have been included in

the 1995 compromise.  Petitioners claimed only DATL as to

liability on their offer-in-compromise.  Petitioners admit that

they never submitted a Form 433-A.

In support of their position, petitioners refer to

information contained in a Government Accountability Office (GAO)

report, "IRS Offers in Compromise, Performance Has Been Mixed;

Better Management Information and Simplification Could Improve

the Program," GAO-06-525 (Apr. 20, 2006) (GAO Report), attached

to their opposition to respondent's motion.  The GAO Report

focuses in part on confusion in the application process caused by

applicants' being required to check a box indicating their desire

to have the offer-in-compromise evaluated under either DATL,

DATC, or ETA.  In response to confusion concerning applicants'

being required to choose one of the three types of offers, the

GAO Report, relying on representations made by the offer-in-

compromise program manager, indicates that although a taxpayer

might check only one of the three boxes, the taxpayer's offer will be evaluated under all three. Id. at 37.

Petitioners, however, confuse the program manager's assurances contained in the GAO Report that the offer will be evaluated on all three grounds (even if only one box is checked) with respondent's ability to impose requirements before consideration of the offer. Petitioners appear to believe that if an offer-in-compromise satisfies the requirements of one of the grounds for review, it satisfies the requirements for all three, whether those other two grounds impose additional requirements for consideration or not.

The current version of the IRM states that an ETA offer will be considered only after the IRS determines that the taxpayer does not qualify under DATL or DATC and that the taxpayer must submit a Form 433-A. 1 Administration, IRM (CCH), pt. 5.8.11.1(3), at 16,373 (Sept. 1, 2005); see also Rev. Proc. 2003-71, sec. 4.03.

Petitioners admitted they did not file a Form 433-A. The settlement officer, in his sworn declaration, addressed his decision to reject petitioners' offer on all three grounds for compromise. The settlement officer stated that he could not evaluate collection alternatives other than DATL because petitioners did not file a Form 433-A. This Court has previously held that it is not an abuse of discretion for Appeals personnel

to refuse to consider collection alternatives such as offers-in-compromise where a taxpayer fails to submit requested financial information.  Schwersensky v. Commissioner, T.C. Memo. 2006-178; Sapp v. Commissioner, T.C. Memo. 2006-104.

The settlement officer also stated that he rejected the 2005 compromise upon DATL grounds because the tax liability at issue had been adjudicated before this Court.  This Court has previously held that the Commissioner's decision to reject a taxpayer's offer-in-compromise on the basis of DATL was a reasonable exercise of discretion where there was no doubt as to the liability.  See Oyer v. Commissioner, T.C. Memo. 2003-178, affd. 97 Fed. Appx. 68 (8th Cir. 2004); see also Baltic v. Commissioner, 129 T.C. 19 (2007).

Respondent requested on numerous occasions that petitioners submit a Form 433-A.  The Form 12153 states on its face that if the applicant wants an offer-in-compromise to be evaluated under either DATC, ETA, or both, the applicant must submit a Form 433-A.  Petitioners filed their offer-in-compromise without the required supporting documents and now ask us to rule that it was an abuse of discretion for respondent not to consider their offer.  We decline to do so.  The record establishes that Appeals requested a collection information statement from petitioners, and we are satisfied that petitioners ignored the request.  Thus, it was not an abuse of discretion for the settlement officer to

decline to consider petitioners' 2005 compromise under either DATC or ETA.  See <u>Schwersensky v. Commissioner</u>, <u>supra</u>.

Accordingly, we hold that no genuine issue of material fact exists requiring trial and that respondent is entitled to summary judgment.  Respondent's determination to proceed with the proposed levy to collect petitioners' tax liability for 1982 was not an abuse of discretion.

To reflect the foregoing,

<u>An appropriate order and</u>

<u>decision will be entered</u>.