T.C. Memo. 2011-21

UNITED STATES TAX COURT

BARRY B. KREISLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17641-08L.                Filed January 25, 2011.

Barry B. Kreisler, pro se.

<u>G. Roger Markley</u>, for respondent.

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:  The respondent (whom we refer to here as the IRS) notified petitioner Barry B. Kreisler that it intended to collect his 2000 income-tax liability by levy.  Kreisler requested a pre-levy hearing with the IRS Appeals Office.  After the hearing, he received an adverse determination from that

office. He has appealed that determination to this Court. We sustain the determination.

### Background

We adopt the stipulation of facts that was executed by Kreisler and the IRS. The original due date of Kreisler's 2000 income-tax return was April 15, 2001.[1] Kreisler was therefore required to pay his 2000 income-tax liability by April 15, 2001.[2] On April 15, 2001, the IRS credited Kreisler's 2000 income-tax liability with $11,266.78 for prepayments made through withholding. The filing deadline for the 2000 return was extended by the IRS to October 15, 2001.[3] According to IRS records, Kreisler filed his return on October 18, 2001. He reported a tax liability of $101,053.

---

[1]Sec. 6072(a) provides that income-tax returns made on the basis of the calendar year must be filed on or before Apr. 15 of the following year. Unless otherwise indicated, all section references are to the Internal Revenue Code.

[2]Sec. 6151(a) requires the taxpayer to pay the tax at the time fixed for filing the return (without regard for any extension of time for filing the return).

[3]Sec. 6081(a) authorizes the IRS to extend the deadline for filing a return by 6 months.

On November 26, 2001, the IRS assessed the following liabilities related to the tax year 2000: a tax liability of $101,053;[4] a late-payment penalty of $3,591.45;[5] an estimated-tax penalty of $4,171.56; and interest of $4,154.12. On December 3, 2001, the IRS assessed interest of $136.61. On April 15, 2002, the IRS applied a tax credit of $35,993.17 to Kreisler's tax account for his 2000 income tax.

On June 5, 2002, Kreisler filed a Chapter 11 bankruptcy petition. On June 19, 2002, the IRS filed a proof of claim. In November 2002, Kreisler's bankruptcy case was converted from Chapter 11 to Chapter 7. On April 15, 2003, the IRS applied a tax credit of $3,725.08 to Kreisler's tax account for his 2000 income tax.

On June 3, 2004, Kreisler received a discharge. On August 31, 2004, the IRS filed a "second amended (current) proof of claim" in the Chapter 7 case. It asserted an unsecured priority claim, under 11 U.S.C. sec. 507(a)(8), of $57,001.62.[6] The

---

[4]Note that the amount assessed was the amount shown on the return, $101,053, and was not reduced by the $11,266.78 of prepayments. As explained in Saltzman, IRS Practice and Procedure, par. 10.02[3], at 10-13 (rev. 2d ed. 2002): "When a taxpayer files a return showing that a tax is due, * * * if only partial payment is enclosed with the return, the tax reported is assessed".

[5]The $3,591.45 is equal to (0.5 percent) x (8 months) x ($101,053 - $11,266.78).

[6]The $57,001.62 comprised year 2000 tax due of $49,767.97
(continued...)

second amended (current) proof of claim also asserted an unsecured nonpriority claim of $11,597.72.  The $11,597.72 was described on the second amended (current) proof of claim as "Penalty to date of petition on unsecured priority claims (including interest thereon)."  The second amended (current) proof of claim did not assert that the IRS had a secured claim.

On July 29, 2006, the IRS mailed to Kreisler a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for income tax for the year 2000.  The notice stated that the IRS intended to levy on Kreisler's property unless Kreisler requested a pre-levy hearing or paid $84,815.10.  The $84,815.10 comprised the following amounts:

- $61,821.71 assessed balance for income tax for the 2000 year,

- $20,133.81 accrued interest on unpaid income tax for the 2000 year,

- $2,859.58 late-payment penalty on unpaid income tax for the 2000 year.

Around August 15, 2006, Kreisler mailed a written request for a pre-levy hearing.  The request asserted that the IRS had a

---

[6](...continued)
(assessed on Nov. 20, 2001) and interest on unpaid 2000 taxes, accrued to the petition date, of $7,233.65.  (The record does not explain why the assessment date was noted on the second amended (current) proof of claim as Nov. 20, 2001, instead of Nov. 26, 2001, the date noted on the IRS transcript as the date of assessment).

"preferred claim" in the bankruptcy case of $108,317.59, that the trustee held over $702,000 in assets, that the other "preferred claims" totaled only $100,000, and that the IRS would soon receive the full amount of "its claim" from the bankruptcy estate. The request asked the IRS to refrain from levying. It did not present any challenges to the amount of the 2000 income-tax liability, including interest and penalties. It did not seek consideration of an offer-in-compromise or an installment agreement. After receiving the request for the hearing, the Appeals officer assigned to handle the hearing had numerous communications with Kreisler and with Kreisler's representative. Kreisler and the Appeals officer came to an understanding that the hearing would not concern the amount of his tax liability, interest, or penalties. Rather, the hearing would concern only the question of whether the IRS should delay the levy because of the prospect that the IRS priority claim might be paid by the bankruptcy estate.

On June 12, 2008, the Appeals officer met with Kreisler and Kreisler's representative for the pre-levy hearing. At the hearing, the Appeals officer advised for the first time that the IRS would forbear from collecting the IRS claim in bankruptcy, pending the trustee's release of funds from the estate, but would require that a portion of the penalty and interest that it contended had accrued after the petition date be paid immediately

in order to avoid collection action.[7]  In lieu of immediate payment, the Appeals officer offered to enter into an installment agreement.  As the Appeals officer's notes reflect, the penalty and interest that were required to be paid amounted to $39,896.44.  The notes state that this $39,896.44 comprised $29,196.33 of interest computed from the discharge date of June 3, 2004, until June 5, 2008 and $10,700.11 for the failure-to-pay penalty.  The notes indicate that the $10,700.11 failure-to-pay penalty was computed as accruing until January 2008 because, according to the Appeals Office's calculations, the maximum 50 months was reached then.[8]  (However, the IRS contends in its brief that the $10,700.11 "had accrued from the bankruptcy discharge date of June 3, 2004 until June 5, 2008".)  Kreisler did not agree with these amounts.  He asked for 30 days to research whether these penalty and interest amounts were correct.

_____

[7]The parties stipulated:

SO Adams [the Appeals officer assigned to handle Kreisler's hearing] and the petitioner and his representative attended a CDP hearing on June 12, 2008, at which time SO Adams for the first time advised that the respondent would forebear from collecting the respondent's claim in bankruptcy, pending the trustee's release of funds from the estate, but would require that the penalty and interest she contended had accrued after the petition date be paid immediately in order to avoid collection action.

[8]For every month that a taxpayer fails to pay the tax reported on a return, the penalty increases by 0.5 percent of the tax reported until the penalty reaches 25 percent.  Sec. 6651(a)(2).

The Appeals officer refused his request.  On June 19, 2008, the Appeals Office mailed to Kreisler a notice of determination. Kreisler filed a timely petition with the Tax Court.  At the time he filed the petition, Kreisler lived in Illinois.[9]

On November 5, 2009, the bankruptcy court signed an agreed order allowing the IRS's unsecured priority claim of $57,001.62 and its unsecured nonpriority claim of $11,597.72.  The Tax Court case was tried on December 9, 2009.  As of the date of trial, the administration of the bankruptcy estate was ongoing, and the tax liability had not been paid.

Discussion

1.   Standard of Review

Section 6330 forbids the IRS to levy until the IRS notifies the taxpayer of the taxpayer's right to a pre-levy hearing with the Appeals Office.  At the pre-levy hearing, the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including challenges to the appropriateness of collection actions and "offers of collection alternatives, which may include * * * an installment agreement".  Sec. 6330(c)(2)(A).

---

[9]The filing of the bankruptcy petition by Kreisler on June 5, 2002, triggered an automatic stay of all proceedings and actions against Kreisler, see 11 U.S.C. sec. 362(a)(1) (2006), including the commencement of any Tax Court case concerning the tax liability of Kreisler for the tax year 2000, see 11 U.S.C. sec. 362(a)(8).  When Kreisler received a discharge on June 3, 2004, the automatic stay was terminated.  See 11 U.S.C. sec. 362(c)(2)(C).

A taxpayer may contest the "existence or amount of the underlying tax liability" if the taxpayer did not receive a notice of deficiency for the tax liability in question and did not otherwise have an earlier opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); Oyer v. Commissioner, T.C. Memo. 2003-178, 85 T.C.M. (CCH) 1510, 1513-14, affd. 97 Fed. Appx. 68 (8th Cir. 2004). For these purposes the underlying tax liability includes penalties and interest. Montgomery v. Commissioner, 122 T.C. 1, 8 (2004). Following the hearing, the Appeals officer must make a determination that considers the issues raised by the taxpayer and other mandatory issues. Sec. 6330(c)(3). We have jurisdiction to review the Appeals officer's determination. Sec. 6330(d)(1). Since the underlying tax liability is not at issue, we review the Appeals officer's determination for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 609-610 (2000). Abuse of discretion has been defined as "determinations [that] were arbitrary, capricious, or without sound basis in fact or law." Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).

2. Analysis

The only issue Kreisler raised at the hearing was whether the Appeals officer should decline to levy because of the prospect that the IRS's priority claim would be paid by the bankruptcy estate. We do not believe that the decision against delaying the levy was an abuse of discretion. First, delaying

the levy could have pushed back the date on which the IRS would have collected the tax liability. That is because the levy could have resulted in collection of the liability sooner than the IRS would have received assets in distribution from the bankruptcy estate. Second, delaying the levy would have reduced the number of ways in which the IRS could seek collection. The levy would operate against Kreisler's personal assets.[10] By contrast, the distributions by the bankruptcy trustee could occur only out of the assets of the bankruptcy estate. 11 U.S.C. secs. 726 (2006) (requiring trustee to distribute property of the estate), 541(a)(1) (property of estate is all property of debtor when debtor filed petition). In this instance, it was within the discretion of the Appeals officer to attempt to collect the liability sooner rather than later, and to attempt to use two methods of collection rather than one.

As recounted above, the Appeals officer proposed an installment agreement under which the IRS would decline to levy if Kreisler would agree to pay postdischarge penalties and interest in installments. Kreisler refused this offer. Kreisler now charges that the Appeals officer mishandled the installment agreement offer by attaching to the offer the condition that

[10]A discharge in bankruptcy absolves the debtor of all personal liability. 11 U.S.C. sec. 524(a) (2006). However, it does not discharge tax debts that arose 3 years before bankruptcy. 11 U.S.C. sec. 523(a)(1)(A) (2006), 11 U.S.C. sec. 507(a)(8) (2006).

Kreisler pay postdischarge penalties and interest and by refusing to allow him the opportunity to dispute his liability for the postdischarge penalties and interest.

How to analyze the Appeals officer's handling of its installment agreement offer depends upon whether the offer is related to "offers of collection alternatives, which may include * * * an installment agreement", see sec. 6330(c)(2)(A)(iii), or is instead related to a challenge to the "existence or amount of the underlying tax liability", see sec. 6330(c)(2)(B). Under either view, the Appeals officer did not err. Viewed as an issue related to an offer of collection alternatives, the offer was handled appropriately by the Appeals officer. Kreisler failed to indicate in his request for a hearing or in any communications with the Appeals Office before the hearing that he wished to discuss an installment agreement. Under these circumstances, the Appeals Office was within its discretion to make an installment agreement offer on its own accord and to refuse to allow Kreisler additional time to consider the offer.[11] To find fault in the conditions by which the Appeals Office presented the installment agreement offer for negotiation would discourage the Appeals

---

[11]To the extent Kreisler was requesting that the Appeals officer postpone the levy, wait until the bankruptcy case was closed, and then at some future date consider issues related to the levy, it was not an abuse of discretion for the Appeals officer to refuse to delay the collection of tax through such a drawn-out procedure.

Office from bringing up collection alternatives on its own initiative. The purpose of collection-review procedures is to foster the Appeals Office's consideration of alternatives to collection, not to discourage such consideration.

Alternatively, if viewed as related to a potential challenge by Kreisler to the existence or amount of his underlying tax liability, the installment agreement offer was handled appropriately by the Appeals officer. By statute, the Appeals officer was required to consider any challenge by Kreisler to the existence or amount of the underlying tax liability. See sec. 6330(c)(3)(B). Thus, if Kreisler had challenged the amount of his 2000 income-tax liability, a challenge which could have encompassed at least some of his liability for penalties and interest, the Appeals officer would have been obliged to consider Kreisler's arguments. We find that Kreisler chose not to raise, as an issue for the hearing, his underlying tax liability. In his written request for a hearing, Kreisler did not discuss his tax liability. Furthermore, he reached an understanding with the Appeals officer before the hearing that he would not challenge the liability. As Kreisler says in his reply brief:

> the Petitioner and his representative came fully prepared to address the only issue of which Petitioner was aware–that the priority claim would be paid in full by the trustee and to again request that no action be taken to the detriment of the Petitioner until the priority claim was paid.

Kreisler chose to limit his issues before the Appeals officer to only one thing. He wanted the levy delayed until the bankruptcy estate made payments to the creditors. Thus, we are not authorized to consider the issue of his tax liability. Sec. 301.6330-1(f)(2), A-F3, Proced. & Admin. Regs.

Kreisler also complains that before the hearing, the IRS Appeals officer failed to understand that the bankruptcy estate had funds sufficient to pay the priority claim in full. Yet the Appeals officer apparently agreed with Kreisler during the hearing that the priority claim would be paid in full. Kreisler cannot complain that the Appeals officer accepted Kreisler's own theory. The real problem was that Kreisler rested all his hopes on convincing the Appeals officer to wait until the IRS's priority claim had been paid without taking action to collect Kreisler's other debts.

Kreisler also argues that the IRS erred by not pressing to receive payment of its priority claim by the bankruptcy trustee. The first problem with this argument is that it is new. Kreisler never brought it up with the Appeals Office. Therefore, Kreisler is barred from making the argument now. See sec. 301.6330-1(f)(2), A-F3, Proced. & Admin. Regs. Second, Kreisler does not explain what the IRS should have or could have done differently to protect its claim in the bankruptcy proceeding. We therefore reject his argument. We have considered all of Kreisler's other

arguments and determined that they are irrelevant to whether the Appeals Office abused its discretion.[12]

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[12]In making its determination, the Appeals Office had a duty to verify that the requirements of any applicable law or administrative procedure had been met. See sec. 6330(c)(1). We are satisfied that the Appeals Office did not err in performing this duty. The Appeals Office also had a duty to take into consideration whether the proposed levy balanced the need for efficient collection of taxes with the legitimate concern of Kreisler that any collection action be no more intrusive than necessary. See sec. 6330(c)(3)(C). We are satisfied that the Appeals Office did not err in performing this duty.