129 T.C. No. 19

UNITED STATES TAX COURT

PETER P. BALTIC AND KAREN R. BALTIC, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No 2826-06L.                    Filed December 27, 2007.

Bs received a notice of deficiency but filed no
petition in this Court. R assessed the tax reported and
then sent Bs CDP Notices that he had filed notices of
federal tax lien and intended to collect the unpaid tax
by levy. Bs requested a CDP hearing, at which they
presented an offer-in-compromise based on doubt as to
liability. R's officer who conducted the hearing issued
a notice of determination sustaining the filing of the
lien and postponing the levy but refused to consider
Bs' proposed offer herself.

<u>Held</u>: R committed no abuse of discretion in
issuing the notice of determination, because section
6330(c) bars taxpayers who've received a notice of
determination from challenging their underlying tax
liability, and an offer-in-compromise based only on
doubt as to liability is a challenge to that underlying
liability.

Joe Alfred Izen, Jr., for petitioners.

Wesley J. Wong, for respondent.


OPINION

HOLMES, Judge: The Code encourages taxpayers to settle their differences with the IRS by compromise rather than litigation. One type of compromise is a compromise based on doubt as to liability, and that's the kind that Peter and Karen Baltic offered to the IRS. But they made their offer just as the IRS was poised to begin seizing their property--and after they had had a chance to contest their liability in our court. Section 6330[1] says that taxpayers like the Baltics can't challenge their "underlying tax liability." The main question in this case-- which we've apparently never quite squarely answered--is whether their making an offer-in-compromise based on doubt as to liability (an OIC-DATL) is a challenge to the "underlying tax liability."

Background

In February 2003, the Commissioner sent the Baltics a notice of deficiency saying they owed over $100,000 in income tax and penalties for 1999. The Baltics don't dispute that they received

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

the notice, and don't dispute that they never filed a petition in this Court to challenge it. Since the Baltics didn't challenge the deficiency, the Commissioner assessed it. The Baltics didn't pay and so, in June 2004, the Commissioner sent them a notice under section 6320 that he had filed a federal tax lien against their property, and a notice under section 6330 that he intended to levy their property to collect the unpaid tax. The Baltics promptly requested a collection due process (CDP) hearing. Their request stated that "We disagree with the determination of taxes and additions owed, and the calculations of the amounts, if any." Before the hearing was scheduled, they submitted an OIC-DATL that covered not just 1999, but all tax years from 1997 through 2003, offering $18,699 to compromise their entire income tax liability for all those years. They also submitted amended tax returns for 1997-1999[2] and 2003, and original tax returns for the years 2000-2002.[3]

---

[2] As with the Baltics' 1999 tax year, the Commissioner had already assessed deficiencies for the Baltics' 1997 and 1998 tax years after they failed to respond to a notice of deficiency for those years.

[3] The Baltics enclosed a cashier's check for the proposed settlement amount with their OIC-DATL, noting on it that cashing the check meant acceptance of the OIC. This is not how the IRS does business. An OIC is accepted only when the taxpayer is notified in writing. Sec. 301.7122-1(e)(1), Proced. & Admin. Regs. Cashing a check does not mean that the IRS has accepted the offer. Colebank v. Commissioner, T.C. Memo. 1977-46; Howard v. Commissioner, T.C. Memo. 1956-219. The Commissioner took the check and applied it to the 1998 tax debt that the Baltics owed

(continued...)

The settlement officer who held the CDP hearing told the Baltics that they couldn't challenge the amount or existence of their tax liability for 1999 because they had had a chance to challenge the liability when they received a notice of deficiency and hadn't done so.  She also explained to them that, even though she herself couldn't consider the OIC-DATL as part of the CDP hearing, an Appeals officer within another part of the IRS would consider it and a revenue officer in yet a third part of the IRS would examine the Baltics' amended 1999 return in what is called an "audit reconsideration."  The settlement officer then ended the CDP hearing, and sent the Baltics a notice in which she determined that collection by levy would be postponed until the IRS both decided whether to accept the OIC-DATL and finished its "audit reconsideration," but that the lien would be sustained.

---

[3](...continued)
and then sent them a letter explaining that partial payment doesn't defeat a tax lien.  His reason for doing so is unclear--section 301.7122-1(h), Proced. & Admin. Regs., says the Commissioner should treat such checks as deposits, not payments; implying the Baltics should ultimately get the money refunded if their offer is rejected.  (Section 7122(c)(1) was recently amended, Tax Increase Prevention and Reconciliation Act of 2005, Pub. L. 109-222, sec. 509, 120 Stat. 362, to require partial payment to be submitted with an OIC, but the amendment doesn't affect the Baltics, because they submitted their OIC before the amendment's effective date.)

(Sustaining the lien protects the government's priority over other creditors.)  The Baltics offered no other collection alternatives.

The Baltics now argue that the settlement officer's refusal to consider the OIC-DATL herself,[4] or at least to wait before issuing the notice of determination until the other parts of the IRS finished looking at the OIC-DATL and amended return, was an abuse of discretion.  The Commissioner moved for summary judgment, and the motion was argued during a trial session in Las Vegas.[5]

### Discussion

Summary judgment is appropriate where it is shown that "there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b); Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment is proper here since the parties don't dispute the facts at all, but disagree only about the law:  Did the settlement

---

[4] Sec. 6133(k)(1) generally blocks the IRS from collecting taxes by levy (though not by lien) while an OIC is pending.  The Baltics' very narrow challenge is not to the IRS's decision to collect by levy--any levy to collect taxes owed for any of the years covered by their OIC is postponed by sec. 6331(k)(1)--but to the settlement officer's decision that she herself would not consider their OIC-DATL as a collection alternative during the CDP process.

[5] The Baltics were residents of Ohio when they filed their petition, though they chose Las Vegas as their place of trial. Unless the parties stipulate to the contrary, any appeal will go to the Sixth Circuit.  Sec. 7482(b)(1)(A) and (2).

officer abuse her discretion by issuing the notice of determination without considering the Baltics' pending OIC-DATL or amended 1999 return?

Section 6330(c)(2)(B) allows a taxpayer to challenge the existence or amount of his underlying tax liability if he neither received a notice of deficiency nor otherwise had an opportunity to dispute it.  The Baltics' first line of attack is that they should have been allowed to challenge their underlying liability because section 6330(c)(2)(B)--though it allows challenges to "the underlying tax liability for any tax period *if* the person did not receive any statutory notice of deficiency"--doesn't say that it allows such challenges "*only if* the person did not receive any statutory notice of deficiency."

This parsing has no support in any caselaw, as the Baltics' counsel admitted at oral argument.  And we won't be creating any here:  Congress used section 6330(c)--and only section 6330(c)-- to describe how a CDP hearing would work.  We find no authority elsewhere in the Code to read that section's command that the IRS allow challenges to liability in some situations to mean that the IRS must allow challenges to liability in all situations.

The Baltics' next sally looks more effective.  They claim that making an OIC-DATL is not a challenge to their underlying liability.  If it's not, then it should have been considered at the CDP hearing, because section 6330(c)(2)(A)(iii) lists OICs as

a collection alternative that a taxpayer may raise at the hearing.  We have, however, already come very close to holding that OIC-DATLs are a prohibited challenge to the underlying tax liability.  In <u>Hajiyani v. Commissioner</u>, T.C. Memo. 2005-198, we wrote in a footnote that an OIC-DATL "would address the merits of the underlying liability.  Since petitioner is precluded from questioning the underlying liabilities, his offer would not provide him any relief...."  But the Baltics are right in noting that <u>Hajiyani</u>--in the text--held that the Commissioner was justified in not considering an OIC-DATL because the taxpayers hadn't even submitted one before the notice of determination came out.  The same is true of the taxpayers in <u>Jones v. Commissioner</u>, T.C. Memo. 2007-142, and in <u>Kindred v. Commissioner</u>, 454 F.3d 688, 696 (7th Cir. 2006) (affirming an unpublished order granting the Commissioner summary judgment).

We've also held that the Commissioner didn't abuse his discretion in rejecting an OIC-DATL where the underlying tax liability was previously stipulated in a Tax Court decision, because a stipulated tax liability can't validly be considered a "doubtful liability" under the applicable regulation.  Sec. 301.7122-1(b)(1), Proced. & Admin. Regs.; <u>Oyer v. Commissioner</u>, T.C. Memo. 2003-178, affd. 97 Fed. Appx. 68 (8th Cir. 2004).

We recognize that the Baltics' case is a bit different. They plausibly distinguished their situation from cases like

Hajiyani by having made sure that the IRS employee conducting their CDP hearing had an OIC-DATL sitting in front of her. And, though they didn't discuss Oyer, the Baltics could likewise distinguish that case from theirs by saying that they never signed a stipulated decision, but simply chose not to start a Tax Court case when they had a chance.

The Baltics also have one case, Siquieros v. United States, 94 AFTR 2d 2004-5518, 2005-1 USTC par. 50,244 (W.D. Tex. 2004), affd. 124 Fed. Appx. 279 (5th Cir. 2005), that they argue supports them. Or at least one sentence in that case that supports them: "Her [i.e., Siquieros's] offer based on doubt as to liability is not synonymous with a challenge to the underlying liability." Id. at 2004-5524, 2005-1 USTC par. 50,244, at 87,570.

The quote is accurate, but Siquieros remains the thinnest of supports for any general proposition that an OIC-DATL is not a challenge to an "underlying tax liability."[6] It is, for one thing, a responsible-party, trust-fund case.[7] And Siquieros was

---

[6] The court held that the IRS did not abuse its discretion in refusing to accept Siquieros's OIC. Siquieros, 94 AFTR 2d at 2004-5518, 2005-1 USTC at 87,570-87,571. It's in the court's discussion of why the rejection wasn't an abuse of discretion that it noted that an OIC-DATL wasn't synonymous with a challenge to the underlying liability. Neither side had actually disputed the point. Id.

[7] Taxes that employers withhold from their employees' wages are known as "trust fund taxes" because they are deemed a special
(continued...)

challenging underlying liability only in the sense that she was contesting her own responsibility for the tax, not in the sense of challenging the amount of that tax. Siquieros had not had an opportunity before her CDP hearing to challenge her responsibility for the unpaid tax; the Baltics did. And we conclude that that is an important--indeed decisive--difference. The word "liability" in section 6330(c)(2)(B) and section 301.7122-1(b)(1), Proced. & Admin. Regs., refers not just to an amount of tax owed for a particular period but also the amount owed by a particular person for a particular period. Section 6203, defining a tax assessment, states that an assessment is the formal recording of a taxpayer's tax liability, and the accompanying regulation requires the summary record of assessment to "provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the

---

⁷(...continued)
fund in trust for the United States under section 7501(a). Slodov v. United States, 436 U.S. 238, 243 (1978). One remedy that the Commissioner has against a business that fails to pay these withheld taxes is to collect them from a "responsible person" within the company; i.e., someone who was required to pay over the tax. Sec. 6672. A section 6672 penalty is payable on notice and demand, without issuance of a notice of deficiency. See sec. 6212(a). Our court therefore has no jurisdiction to review the penalty, Moore v. Commissioner, 114 T.C. 171, 175 (2000), and a taxpayer must usually pay and sue for a refund to get judicial review. Sec. 6672(c)(2); Steele v. United States, 280 F.2d 89 (8th Cir. 1960). A key issue in such cases is often whether the person suing for a refund is a "responsible person" within the meaning of section 6672(a). See, e.g., McGlothin v. United States, 720 F.2d 6 (6th Cir. 1983).

amount of the assessment."  Sec. 301.6203-1, Proced. & Admin. Regs.  Siquieros was arguing only that she herself shouldn't be liable for her employer's failure to pay over the taxes because she was only a secretary.

The Baltics are not arguing that the IRS is going after the wrong person.  Neither Baltic, for example, is claiming innocent-spouse relief; they dispute only the amount of tax due.  Which is, of course, exactly what they could have challenged by filing a petition when they got their notice of deficiency.  We therefore unequivocally hold that a challenge to the amount of the tax liability made in the form of an OIC-DATL by a taxpayer who has received a notice of deficiency is a challenge to the underlying tax liability.  Because the Baltics already had their chance to challenge that liability, section 6330(c)(2)(B) bars them from challenging it again.[8]

That leaves only the settlement officer's refusal to wait until the IRS reviewed the OIC-DATL and completed its audit

---

[8] The Baltics also argue that section 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs., grants discretion to IRS employees to consider challenges to liability despite section 6330(c)(2)(B) and ask us to review for abuse of discretion the decision by the settlement officer not to review their liability.  We've already held that the Code itself limits the power of both the Commissioner and our Court to reconsider liability issues. Nichols v. Commissioner, T.C. Memo. 2007-5.  Here, the determination did not address the precluded issue of liability, and the Baltics' challenge amounts to nothing more than a roundabout effort to challenge what they're prevented from challenging on appeal.

reconsideration (which, we should note, no one doubts is a form of challenge to their underlying tax liability). The Baltics contend that the Commissioner's refusal was itself an abuse of discretion. We have already rejected this argument when a taxpayer urged waiting for an audit reconsideration. Jones v. Commissioner, T.C. Memo. 2007-142. Adding a desire to wait for consideration of an OIC-DATL as well adds nothing to the argument: The settlement officer here was just heeding the exhortation of the applicable regulation to issue a notice of determination as expeditiously as possible. Sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs.

The purpose of a CDP hearing is to balance the government's requirement for effective tax administration with the taxpayer's concern that collection be minimally intrusive. By deciding to hold off on collection by levy but preserve the government's lien priority while other employees of the IRS considered the Baltic's OIC-DATL and various late-filed returns, the Commissioner exercised discretion in a completely reasonable way, and so

An order and decision in favor of respondent will be entered.