**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-29

UNITED STATES TAX COURT

MARY ELLEN KALIL AND THOMAS FORD KALIL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29261-11S L.          Filed April 8, 2013.

Mary Ellen Kalil and Thomas Ford Kalil, pro sese.

<u>Scott A. Hovey</u> and <u>Jeff Gold</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of
section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioners invoked the Court's jurisdiction by filing a petition for judicial review of a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).  Petitioners contend that the Office of Appeals (Appeals Office) erred in determining that it is appropriate to proceed with a proposed levy to collect petitioners' unpaid tax liability for 2004.  Specifically, petitioners aver that:  (1) the proposed collection action is barred because respondent failed to assess the liability within the applicable period of limitations, (2) their tax liability for 2004 was completely satisfied through estimated tax payments, and (3) further collection activity would violate a prior settlement agreement between the parties.  Petitioners resided in Virginia at the time the petition was filed.

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times.  All monetary amounts are rounded to the nearest dollar.

## Background

Petitioners assert that they mailed joint Federal income tax returns for the taxable years 2003 and 2004 to the Internal Revenue Service (IRS) on August 13, 2004, and October 14, 2005, respectively.  Petitioners did not retain copies of their original tax returns for 2003 and 2004, and they have no records, such as certified or registered mail receipts, showing the dates the tax returns were mailed to or received by the IRS.

During the period in question Mrs. Kalil was largely responsible for the family's financial records, including maintaining copies of their Federal income tax returns.  Mrs. Kalil had previously sustained injuries in a car accident that impaired her memory and ability to concentrate.  Mrs. Kalil attempted to hide her impairments from Mr. Kalil and other family members.

During 2004 and 2005 petitioners maintained a daily calendar with handwritten notes of their activities.  Petitioners' calendar entry for Friday, August 13, 2004, states:  "2003 Tax forms sent Lorton P.O. 1:30 pm".  Petitioners' calendar entry for Friday, October 14, 2005, states:  "2004 Tax forms sent from Lorton P.O. 10:30 am".

Because respondent had no record of petitioners' having filed a tax return for 2004, respondent prepared a substitute for return for petitioners' 2004 taxable year pursuant to section 6020(b) on July 22, 2008.

On or about August 4, 2008, respondent notified petitioners that there was no record that they had filed tax returns for 2004, 2005, and 2006.

On October 17, 2008, petitioners mailed a joint tax return for 2004 to the IRS. Respondent received petitioners' 2004 tax return on October 20, 2008. The tax return included the following handwritten notation: "This is a 'reconstruction' of the original Returns that were submitted in a timely fashion."

On November 10, 2008, respondent mailed to petitioners by certified mail a notice of deficiency for 2004 determining a deficiency in tax of $195,807 and various additions to tax. Although petitioners received the notice of deficiency, they did not file a petition for redetermination with the Court.[2]

Sometime after August 4, 2008, respondent notified petitioners that there was no record that they had filed a tax return for 2003. On December 3, 2008, respondent received from petitioners a "reconstructed" copy of their joint tax return for 2003.

---

[2]In April 2010 respondent issued notices of deficiency to petitioners for the taxable years 2005 and 2006. Petitioners contested those deficiency notices by filing a petition for redetermination at docket No. 16024-10S.

Petitioners reported total tax of $3,589, income tax withholding of $8,914, estimated tax payments of $18,075, and an overpayment of $23,400 on their tax return for 2003. Petitioners designated the entire claimed overpayment for 2003 as an estimated tax payment for the taxable year 2004.[3]

Petitioners reported total tax of $24,460, income tax withholding of $9,536, estimated tax payments of $23,400, and an overpayment of $8,476 on their tax return for 2004. Petitioners designated the entire claimed overpayment for 2004 as an estimated tax payment for the taxable year 2005.

Respondent concluded that petitioners' 2003 return was not filed until December 3, 2008, and, therefore, their claimed overpayment for that year amounted to an untimely refund claim that was ineligible for designation as an estimated tax payment for 2004. On April 6, 2009, respondent assessed tax of $5,324 for 2003[4] and transferred petitioners' 2003 overpayment to an IRS account for so-called excess collections.

---

[3]Petitioners actually designated $23,753 as the amount to be applied as an estimated tax payment for 2004, although that amount exceeded the amount of the claimed overpayment for 2003.

[4]The difference between the tax of $3,589 reported on petitioners' 2003 return and the $5,324 amount that respondent assessed is attributable in large part to respondent's disallowance of a child tax credit of $2,000 that petitioners claimed for that year.

In the interim, on February 13, 2009, respondent decided to treat petitioners' tax return for 2004 as their consent to assessment of the amounts reported therein, and respondent made an entry on their transcript of account indicating that the notice of deficiency for 2004 was "CLOSED".

On March 16, 2009, respondent assessed tax of $26,670 for 2004,[5] an addition to tax of $3,994 for failing to file a timely return, an addition to tax of $3,891 for failing to pay the tax due timely, an addition to tax of $480 for failure to pay estimated tax, and statutory interest of $5,922. Respondent credited petitioners with income tax withholding of $8,920 as of April 15, 2005.

On September 25, 2009, petitioners sent a letter to the IRS along with a check for $552. The letter stated in relevant part:

> [W]ith this agreement the U.S. Department of Treasure [sic], IRS hereby agrees that the amount of Federal Income tax refund owed by the U.S. Department of Treasury to Thomas F. and Mary E. Kalil following payment of the $552 is $27,873.87 and no other debt is owed for Income Tax and/or penalties by Thomas and Mary Kalil for all tax years including 2002 through 2007. * * * [N]egotiation of the enclosed check Number 5918 in the amount of $552 constitutes full and unqualified acceptance of this settlement agreement."

The IRS negotiated the check attached to petitioners' letter.

---

[5]The difference between the tax of $24,460 reported on petitioners' 2004 return and the $26,670 amount that respondent assessed is attributable in large part to respondent's disallowance of a child tax credit of $2,000 that petitioners claimed for that year.

Respondent issued to petitioners a notice and demand for payment of their outstanding tax liability for 2004. After petitioners failed to remit payment, respondent issued to petitioners a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for 2004. Petitioners timely submitted to respondent a request for a collection due process hearing pursuant to section 6330. Petitioners' hearing request stated in relevant part: "Statute of limitations has passed. The IRS no longer has the right to question my tax return. Furthermore, the IRS has accepted a compromise payment and negotiated said payment subject to the agreement." Following a series of telephone conference calls with petitioners, the Appeals Office issued a notice of determination to them stating that respondent intended to proceed with the proposed levy. Petitioners filed a timely petition for lien or levy action with the Court challenging the notice of determination.

## Discussion

If any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, then the Commissioner is authorized to collect such tax by levy upon the person's property. Sec. 6331(a). At least 30 days before enforcing collection by way of a levy on the person's property, the Commissioner is obliged to provide the person with a final notice of intent to levy, including notice of the administrative appeals available to the person. Sec. 6331(d).

Generally speaking, the Commissioner cannot proceed with collection by levy until (1) the person has been given notice and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if the person is dissatisfied, (2) judicial review of the administrative determination is final. Sec. 6330; see Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).

The Appeals Office is responsible for conducting administrative hearings in collection matters. Sec. 6330(b)(1). In particular, the Appeals Office must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The Appeals Office also must consider any issues raised by the person relating to the unpaid tax or proposed levy, including offers of collection alternatives, appropriate spousal defenses, and challenges to the appropriateness of the collection action. Sec. 6330(c)(2)(A). A person may challenge the existence or amount of his or her underlying tax liability if the person did not receive a notice of deficiency or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). Finally, the Appeals Office must consider whether the collection action balances the need for efficient collection against the person's concern that collection be no more intrusive than necessary. Sec. 6330(c)(3)(C).

Petitioners challenge respondent's determination to proceed with the proposed levy on two related, but alternative, grounds. Petitioners first claim that they timely filed their tax return for 2004 in October 2005, and, therefore, the period of limitations on assessment under section 6501(a) expired several months before respondent entered the assessments in question on March 16, 2009. In the alternative, petitioners contend that they timely filed their tax return for 2003 in August 2004, and respondent has failed to properly account for an overpayment of $23,400 for that year which they designated as an estimated tax payment for 2004.

Petitioners' alternative arguments amount to a challenge to the existence or amount of their underlying tax liability for 2004 within the meaning of section 6330(c)(2)(B). See Hoffman v. Commissioner, 119 T.C. 140, 145 (2002) (and cases cited thereat); Landry v. Commissioner, 116 T.C. 60, 62 (2001). However, the record reflects that respondent issued a notice of deficiency to petitioners for 2004 and, although they received the deficiency notice, they did not file a petition for redetermination with the Court. Consistent with section 6330(c)(2)(B), and under the particular circumstances of this case, petitioners may not rely on the period of limitations on assessment or the proper application of estimated tax payments in this proceeding. See Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Even assuming for the sake of argument that petitioners could challenge either the timeliness of the assessment for 2004 or the proper application of estimated tax payments, we would sustain respondent's determination. Although petitioners maintain that their tax returns for 2003 and 2004 were timely filed, they were unable to provide the Court with a copy of either return or certified or registered mail receipts establishing the dates the tax returns were actually placed in the mail or otherwise delivered to the IRS. Without more, we conclude that petitioners did not file their tax returns for 2003 and 2004 until December 3, 2008, and October 20, 2008, respectively, as reflected in respondent's transcripts of account.

Consistent with the foregoing, it follows that the assessment for the taxable year 2004, entered on March 16, 2009, was timely. See sec. 6501(a). Likewise, respondent did not err in accounting for petitioners' estimated tax payments. The overpayment of $23,400 that petitioners' claimed on their joint return for 2003 constituted a claim for credit or refund under section 6511(a). However, section 6511(b)(2)(A) provides that the amount of the overpayment allowable to petitioners as a credit or refund cannot exceed the portion of the tax which they paid for 2003 within the three years preceding December 3, 2008--the date they filed their 2003 tax return. Petitioners' claimed overpayment for 2003 was

attributable to estimated tax payments and excess withholding payments deemed to have been paid on April 15, 2004. See sec. 6513(b), (d). In accordance with section 6402(a) and (b), it follows that petitioners' overpayment for 2003 was not allowable as a credit or refund to be applied as an estimated tax payment for 2004 because the tax was paid more than three years before the claim for credit or refund was filed. See Landry v. Commissioner, 116 T.C. at 61-62; see also Reynoso v. United States, 692 F.3d 973, 977-979 (9th Cir. 2012); Brady v. Commissioner, 136 T.C. 422, 428 (2011).

As a final matter, petitioners assert that respondent's collection efforts for 2004 are barred by a binding settlement agreement between the parties. Specifically, on September 25, 2009, petitioners sent respondent a check for $552 and indicated that by negotiating the check respondent would signal his acceptance of the payment in full satisfaction of petitioners' tax liabilities for 2002 through 2007.

It is well settled that the Commissioner's negotiation of such a check does not represent a final determination binding upon the Government as the recipient of the funds. Botany Worsted Mills v. United States, 278 U.S. 282 (1929). Sections 7121 and 7122 prescribe the exclusive means for effecting a settlement or compromise binding on both the taxpayer and the Commissioner. Colebank v.

Commissioner, T.C. Memo. 1977-46, aff'd without published opinion, 610 F.2d 999 (D.C. Cir. 1979). Petitioners' check did not constitute full payment of their tax liabilities, and they did not enter into a binding agreement with respondent to compromise their tax liability for 2004. See Baltic v. Commissioner, 129 T.C. 178, 179 n.3 (2007) ("Cashing a check does not mean that the IRS has accepted the offer." (citing Colebank v. Commissioner, T.C. Memo. 1997-46, and Howard v. Commissioner, T.C. Memo. 1956-219)).

The record otherwise shows that the Appeals Office properly verified that the requirements of all applicable laws and administrative procedure were met in the processing of petitioners' case and that the proposed levy balances the Government's need for the efficient collection of taxes with petitioners' concerns that the collection action be no more intrusive than necessary. Consistent with the foregoing, we sustain respondent's determination to proceed with the proposed levy.

To reflect the foregoing,

Decision will be entered

for respondent.