T.C. Memo. 2016-219

UNITED STATES TAX COURT

ROBERT L. ANDERSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18154-15L.                    Filed December 5, 2016.

Robert L. Anderson, pro se.

<u>William D. Richard</u> and <u>Daniel J. Bryant</u>, for respondent.

MEMORANDUM OPINION

THORNTON, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal

_____

[1]All section references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure, unless otherwise indicated.  All monetary amounts have been rounded
(continued...)

[*2] Revenue Service (IRS) sustaining a proposed levy to collect section 6672(a) trust fund recovery penalties (TFRPs) assessed against him for failing to collect and pay over employment taxes of Lanahan & Reilly, LLP, a law firm of which he was a partner. Respondent has moved for summary judgment under Rule 121. For the reasons explained below, we will grant his motion.

## Background

The following undisputed facts are derived from the petition, respondent's motion for summary judgment and exhibits thereto, and petitioner's response. Petitioner resided in California when he petitioned this Court.

The Earlier 11 Quarters

In 2012 respondent determined that petitioner was responsible for the failure of Lanahan & Reilly, LLP, to pay over to the United States payroll taxes withheld from its employees during the taxable quarter ending September 2008 and during the 10 taxable quarters ending March 2009 to June 2011 (collectively, earlier 11 quarters). Respondent assessed TFRPs for these quarters, and petitioner appealed. On April 19, 2012, the IRS Office of Appeals (Appeals Office) affirmed the TFRPs. Nothing in the record suggests that petitioner ever requested a CDP

---

[1](...continued)
to the nearest dollar.

[*3] hearing with respect to the earlier 11 quarters or that respondent issued any notice of determination relating to them.

The Later Four Quarters

On October 11, 2012, respondent sent petitioner a Letter 1153, Trust Fund Recovery Penalty Letter, determining that he was responsible for the failure of Lanahan & Reilly, LLP, to pay over to the United States payroll taxes withheld from its employees for the four taxable quarters ending September 2011, December 2011, March 2012, and June 2012 (collectively, later four quarters). Respondent proposed to assess TFRPs against petitioner of $8,316, $15,072, $19,357, and $16,082 for these quarters, respectively.

Petitioner appealed the proposed TFRPs for the later four quarters by a written protest filed November 8, 2012. In response, the Appeals Office held an in-person hearing on April 9, 2013. Petitioner contended that he was not responsible for, and had not willfully refrained from paying, the tax liabilities upon which the TFRPs were based. Petitioner participated in the hearing by showing documents, asking questions, and providing explanations in response to questions from the Appeals Office. On April 22, 2013, the Appeals Office issued petitioner a letter sustaining the proposed TFRPs for the later four quarters. Respondent assessed the TFRPs against petitioner on May 20, 2013.

**[\*4]**   On July 29, 2013, respondent issued petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, with respect to the later four quarters.  Petitioner responded by timely filing a Form 12153, Request for a Collection Due Process or Equivalent Hearing, on August 8, 2013.  Petitioner's request for a CDP hearing stated that it was for taxable quarters "Sept. 30, 2011 through June 30, 2012".  Petitioner did not check any boxes indicating he was interested in a collection alternative; he checked only the "Other" box, stating:  "I contend that I am not responsible for these taxes".

On September 27, 2013, respondent sent petitioner a letter acknowledging receipt of his request for a CDP hearing.  On October 22, 2013, respondent sent petitioner another letter proposing a telephone hearing to be held on November 22, 2013.  Before that hearing could be held, however, respondent suspended petitioner's CDP case while the IRS criminal office conducted an investigation.[2]

On March 31, 2014, petitioner filed an offer-in-compromise based on doubt as to liability (OIC-DATL), offering to pay $36,000 in satisfaction of all TFRPs assessed against him; i.e., for the earlier 11 quarters and the later four quarters. Also, at some point before the CDP hearing, petitioner requested that these

[2]The record does not reveal specifically when the IRS criminal investigation began and concluded, but the record suggests that it was concluded by February 4, 2015.

**[\*5]** liabilities be abated. Both the OIC-DATL and the request for abatement were predicated on petitioner's argument that he was not responsible for the TFRPs.

On December 18, 2014, a grand jury, which was convened in the U.S. District Court for the Northern District of California, indicted petitioner for wire fraud, money laundering, and conspiracy to commit money laundering.[3] The District Court issued an order on January 16, 2015, setting conditions of release and an appearance bond. The order required, among other things, that petitioner not harass, threaten, intimidate, injure, tamper with, or retaliate against any witness and that he have no contact with any codefendant out of the presence of counsel.

On February 23, 2015, the settlement officer (SO) to whom petitioner's case was assigned contacted him and proposed a CDP hearing to be held by telephone on March 24, 2015. On March 19, 2015, petitioner requested a six-month delay of the CDP hearing, claiming that in his criminal proceeding the District Court had prohibited him from contacting certain persons who were familiar with his responsibilities at Lanahan & Reilly, LLP.

---

[3]The record indicates that petitioner entered a guilty plea on March 9, 2016, and that sentencing has been set for February 1, 2017.

**[*6]** The SO requested that petitioner provide a written request with supporting documentation so that she could present the request for a six-month extension to her manager. On March 23, 2015, petitioner called the SO back and requested a 30- to 60-day extension of the CDP hearing so he could consult with attorneys. On March 24, 2015, the SO, upon her manager's instructions, denied petitioner's request for a six-month delay but agreed to a new CDP hearing date of April 27, 2015. On April 7, 2015, petitioner called the SO to request an in-person CDP hearing to be held on April 28, 2015; the SO agreed, and the hearing was once again postponed.

On April 27, 2015, Gordon Oliver, petitioner's attorney, called the SO to inform her that petitioner would be unable to attend the in-person hearing on April 28, 2015. Consequently, the hearing was once again rescheduled, and a CDP hearing was held by telephone on May 20, 2015.

Before the hearing the SO reviewed petitioner's TFRP administrative file, apparently consisting of four or five large boxes of materials. The SO concluded that there was sufficient evidence in these files to support the TFRP assessment and to reject petitioner's OIC-DATL and his abatement request.

At the May 20, 2015, hearing the SO discussed these conclusions with Mr. Oliver. On June 19, 2015, the Appeals Office issued petitioner a notice of

**[\*7]** determination, sustaining the proposed levy for the TFRPs associated with the later four quarters and rejecting his OIC-DATL and his request for abatement. The notice of determination states with regard to denial of the OIC-DATL: "Appeals determined by a review of the Trust Fund Recovery Penalty (TFRP) administrative file that the assessment was valid and the taxpayer was a responsible and willful person in regards to the TFRP assessment. The offer in compromise is rejected." The notice of determination also rejected petitioner's abatement claim, stating that the Appeals Office had reviewed the claim and determined that "there is no basis to allow any part of the claim." The notice of determination indicated that the Appeals Office had verified that the requirements of applicable law and administrative procedure had been met and that the Appeals Office had considered the issues raised and balanced the collection action with petitioner's legitimate concern that the action be no more intrusive than necessary.

Petitioner timely petitioned this Court. On April 21, 2016, respondent filed a motion for summary judgment. Petitioner filed his response late, on June 20, 2016, a day before the Court's scheduled hearing on respondent's motion.

**[*8]**                                    <u>Discussion</u>

A.    <u>Summary Judgment</u>

The Court may grant summary judgment when there is no genuine dispute

as to any material fact and a decision may be rendered as a matter of law.  Rule

121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17

F.3d 965 (7th Cir. 1994).  The purpose of summary judgment is to expedite

litigation and avoid unnecessary and time-consuming trials.  <u>Fla. Peach Corp. v.</u>

<u>Commissioner</u>, 90 T.C. 678, 681 (1988).  Where the moving party properly makes

and supports a motion for summary judgment, "an adverse party may not rest upon

the mere allegations or denials of such party's pleading" but must set forth specific

facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.

Rule 121(d).

B.    <u>The Earlier 11 Quarters--Lack of Jurisdiction</u>

Respondent asserts that this Court lacks jurisdiction over the earlier 11

quarters, even though they are referenced in the petition.  We agree.

The Tax Court is a court of limited jurisdiction, <u>Naftel v. Commissioner</u>, 85

T.C. 527, 529 (1985), and may exercise jurisdiction only to the extent expressly

provided by statute, <u>Breman v. Commissioner</u>, 66 T.C. 61, 66 (1976).  Jurisdiction

must be shown affirmatively, and petitioner bears the burden of proving that this

[*9] Court has jurisdiction. See David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. 268, 270 (2000), aff'd, 22 F. App'x 837 (9th Cir. 2001). In a CDP case the Court has jurisdiction only if the IRS has issued a valid notice of determination to the taxpayer and the taxpayer has timely petitioned for review. Sec. 6330(d)(1); Orum v. Commissioner, 123 T.C. 1, 8 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005).

Petitioner does not appear to dispute that no notice of determination was issued with respect to the earlier 11 quarters, and he has not otherwise established any jurisdictional basis for our review of his claims as related to the earlier 11 quarters. We will dismiss for lack of jurisdiction so much of this case as relates to the earlier 11 quarters.

C.     The Later Four Quarters

Income and employment tax withholdings by an employer are commonly referred to as trust fund taxes because the Internal Revenue Code characterizes such withholding as a "special fund in trust for the United States." See sec. 7501(a); Mason v. Commissioner, 132 T.C. 301, 321 (2009). The Commissioner may impose a penalty--known as a TFRP--on any person who, while under a duty to collect, account for, and pay over trust fund taxes, wilfully fails to do so. See secs. 6671 and 6672; Mason v. Commissioner, 132 T.C. at 321. Such a person is

[*10] commonly referred to as a "responsible person[]". <u>Mason v. Commissioner</u>, 132 T.C. at 321.

Petitioner has repeatedly argued that he was not responsible for the trust fund taxes of Lanahan & Reilly, LLP, and that he is therefore not liable for the TFRPs assessed against him. Petitioner first raised the issue of responsibility when--after receiving a Letter 1153--he appealed the proposed TFRPs to the Appeals Office. The Appeals Office considered the issue during an in-person hearing and ruled against petitioner. Later, in connection with his CDP hearing, petitioner submitted an OIC-DATL and requested abatement of TFRPs, including those for the later four quarters, solely on the basis of his argument that he was not a responsible person within the meaning of section 6672. In this proceeding petitioner continues to challenge these TFRPs by arguing that he was not a responsible person.

Respondent argues that section 6330(c)(2)(B) precludes any challenge to petitioner's underlying liabilities in this collection proceeding.[4] We agree.

---

[4]Respondent also argues that petitioner's challenge to his underlying liabilities is precluded by sec. 6330(c)(4)(A), which provides that an issue may not be raised at a CDP hearing if (1) the issue was raised and considered at a previous hearing under sec. 6320 or in any other previous administrative or judicial proceeding; and (2) the person seeking to raise the issue participated meaningfully in such hearing or proceeding. Because we hold for respondent on the basis of our
(continued...)

[*11] Section 6330(c)(2)(B) permits a taxpayer to challenge the existence or amount of his underlying liability in a CDP proceeding only if the taxpayer did not receive a notice of deficiency or otherwise have a prior opportunity to contest that liability. Receipt of a Letter 1153 constitutes a prior opportunity to dispute the taxpayer's liability. Solucorp, Ltd. v. Commissioner, T.C. Memo. 2013-118, at *9; Morgan v. Commissioner, T.C. Memo. 2011-290, 2011 WL 6762929, at *3; McClure v. Commissioner, T.C. Memo. 2008-136, 2008 WL 2120973, at *3-*4; see Mason v. Commissioner, 132 T.C. at 317-318. Petitioner does not dispute that he received a Letter 1153.

Furthermore, a taxpayer's challenge to his status as a responsible person constitutes a dispute of the taxpayer's liability. Morgan v. Commissioner, 2011 WL 6762929, at *3; McClure v. Commissioner, 2008 WL 2120973, at *3-*4 (holding that, where the taxpayer had a previous opportunity to dispute a liability, he "is not entitled to dispute * * * [during review of a CDP hearing by the Court] his status as a responsible person and the consequent liabilities for the underlying * * * [TFRPs]"); Totten v. United States, 99 A.F.T.R.2d (RIA) 2007-2454 (W.D. Wash. 2007) (rejecting the taxpayer's attempt to raise responsibility for TFRPs at

---

⁴(...continued)
application of sec. 6330(c)(2)(B), it is unnecessary to decide whether petitioner's challenge to his underlying liabilities is also precluded by sec. 6330(c)(4)(A).

**[\*12]** his CDP hearing), aff'd, 298 F. App'x 579 (9th Cir. 2008); see Mason v. Commissioner, 132 T.C. at 317-318.[5]

In Baltic v. Commissioner, 129 T.C. 178, 183 (2007), this Court held that "a challenge to the amount of the tax liability made in the form of an OIC-DATL by a taxpayer who has received a notice of deficiency is a challenge to the underlying tax liability." But we acknowledged that in a CDP case involving an OIC-DATL relating to TFRPs, a District Court had stated that an "offer based on doubt as to liability is not synonymous with a challenge to the underlying liability." Id. at 182 (quoting Siquieros v. United States, 94 A.F.T.R.2d (RIA) 2004-5518 (W.D. Tex. 2004), aff'd, 124 F. App'x 279 (5th Cir. 2005)).

---

[5]In affirming Totten v. United States, 99 A.F.T.R.2d (RIA) 2007-2454 (W.D. Wash. 2007), aff'd, 298 F. App'x 579 (9th Cir. 2008), the Court of Appeals for the Ninth Circuit observed that because Totten had not "explained why he did not immediately challenge the result of the first administrative hearing by paying the TFRP and filing suit for refund, see * * * [sec.] 7422, allowing him to dispute the TFRP here would undermine the statutory regime for contesting tax liability." Totten, 298 F. App'x at 580. Similarly, petitioner has not explained why he did not challenge the result of the first Appeals Office hearing by instituting a refund action, and the same concerns that the Court of Appeals expressed about preserving the statutory regime for contesting tax liability arise here. We note that petitioner included as an attachment to his response to respondent's motion for summary judgment an undated and unsigned draft complaint to the U.S. Court of Federal Claims, apparently disputing the Appeals Office's initial denial of his request for relief. The record does not reveal whether petitioner has in fact filed such a complaint with the U.S. Court of Federal Claims or a Federal District Court, which would be the proper forums for any refund claim.

**[\*13]** Characterizing this statement as "the thinnest of supports for any general proposition that an OIC-DATL is not a challenge to an 'underlying tax liability'", we concluded in <u>Baltic</u> that the "decisive" difference between the situations presented in <u>Baltic</u> and <u>Siquieros</u> was that Siquieros had no opportunity before the CDP hearing to challenge her responsibility for the unpaid tax, whereas the Baltics, who had received a notice of deficiency, did have an opportunity to challenge that deficiency. <u>Id.</u> In short, the decisive difference between <u>Siquieros</u> and <u>Baltic</u> was the availability of opportunity and not the argument in the OIC-DATL.

Unlike Siquieros--but like the Baltics--petitioner had an opportunity before his CDP hearing to challenge his responsibility for TFRPs in that, as discussed, he received a Letter 1153 for the later four quarters. And in fact petitioner took advantage of his prior opportunity to dispute responsibility--the Appeals Office held an in-person hearing at which he unsuccessfully contested the TFRPs.

For these reasons the issue of petitioner's responsibility under section 6672 was not properly at issue in the CDP hearing and cannot be raised as an issue in this proceeding. Consequently, our review of the notice of determination is for abuse of discretion. <u>See, e.g.</u>, <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Abuse of discretion exists when a determination is arbitrary, capricious,

**[\*14]** or without sound basis in fact or law.  See, e.g., <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006); <u>see also</u> <u>Keller v. Commissioner</u>, 568 F.3d 710, 716 (9th Cir. 2009), <u>aff'g in part</u> T.C. Memo. 2006-166.

Petitioner suggests that the SO abused her discretion by denying his request for a six-month delay of the CDP hearing.  His petition asserts that he was "unable to present defenses" at his CDP hearing because his "release on unsecured bail provides that he cannot contact potential witnesses."  Consequently, petitioner suggests, he was denied the opportunity at the CDP hearing to present facts which he asserts would have shown that he was not liable for the TFRPs assessed against him.  We disagree for several reasons.

Contrary to petitioner's assertion, the District Court's order, as included in the record of this case, does not prohibit him from contacting potential witnesses. Rather, it orders him not to "harass, threaten, intimidate, injure, tamper with, or retaliate against any witness, victim, informant, juror, or officer of the Court" and orders him not to have contact with any codefendant out of the presence of counsel.  Even drawing factual inferences in the light most favorable to petitioner,

**[*15]** we do not see that the District Court's order prevented him from developing in a timely manner any relevant factual information to submit to the SO.[6]

Furthermore, petitioner's circumstances delayed his CDP hearing for a long time and gave him ample time to prepare for it, even without the additional delay that he sought. His CDP hearing was originally scheduled for November 22, 2013, long before his criminal indictment. Because the CDP proceedings were suspended during the IRS criminal investigation, and owing to additional delays that petitioner requested and was allowed, his CDP hearing was not held until May 20, 2015, about a year and a half after it was originally scheduled. There is no requirement that the Commissioner wait a certain amount of time before making a determination as to a proposed levy. Gazi v. Commissioner, T.C. Memo. 2007-342, 2007 WL 4119009, at *9; sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs. Rather, the regulations provide that the Appeals Office should "attempt to conduct a CDP hearing and issue a Notice of Determination as expeditiously as possible under the circumstances." Sec. 301.6330-1(e)(3), Q&A-E9, Proced. &

---

[6]Taxpayers do not have the right to subpoena and examine witnesses at a CDP hearing, but they may submit facts in the form of affidavits or declarations under penalty of perjury. Katz v. Commissioner, 115 T.C. 329, 337 (2000); Davis v. Commissioner, 115 T.C. 35, 41-42 (2000); sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs. For this reason, we find no merit in petitioner's complaint that he was denied the opportunity to present and examine witnesses at his CDP hearing.

**[*16]** Admin. Regs. The scheduling of petitioner's CDP hearing was entirely reasonable in the light of this requirement and the attendant circumstances.

In any event, the only issue petitioner had raised--his underlying liabilities--was not properly subject to review during the CDP hearing.[7] There was no good reason to further delay petitioner's CDP hearing to provide him an additional opportunity to develop an issue that he was not entitled to raise. For this additional reason, the SO did not abuse her discretion in declining to grant further delays.

On the basis of our review of the record, we conclude that the SO properly verified that all requirements of applicable law and administrative procedure were met. We also conclude that the SO properly considered all relevant issues that petitioner raised at his CDP hearing. She also properly balanced the need for efficient collection of taxes with petitioner's legitimate concern that the collection action be no more intrusive than necessary.

---

[7]Respondent did not waive the restriction set forth in sec. 6330(c)(2)(B) by the SO's considering petitioner's challenge to responsibility at the CDP hearing. See Behling v. Commissioner, 118 T.C. 572, 579 (2002) (upholding the validity of sec. 301.6320-1(e)(3), Q&A-E11, Proced. & Admin. Regs., which provides that any determination made by the Appeals Office with respect to such a precluded issue shall not be considered part of the notice of determination).

**[\*17]** Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and sustain the notice of determination as relates to the proposed levy for the later four quarters.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.